Shane Sipe, Pro Se
3925 Six Gun Road
North Las Vegas, NV 89032
702-372-4022
Shane_sipe@outlook.com

PLAINTIFF IN PROPER PERSON

DISTRICT COURT

CLARK COUNTY, NEVADA

SHANE EDWARD SIPE,

Plaintiff,

-vs-

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT; CLARK COUNTY, NEVADA; SCOTT CIECKO; JEFFREY RIVERA; RAYMOND HALL; AMMON PEACOCK; TY KEKOA VESPERAS; FERNANDO PEREZ; KEVIN MOSS; DONALD SUTTON; MATTHEW CAMPBELL; JASON HANSON; CHRISTOPHER BARBA; [FIRST NAME UNKNOWN] CAMP; [FIRST NAME UNKNOWN] MORRIS; [FIRST NAME UNKNOWN] TONGE; DOES 1-20,**

Defendant(s).

CASE NO.
**2:26-cv-00060-GMN-MDC**

DEPT. NO.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

**(JURY TRIAL DEMANDED)**

## I. INTRODUCTION AND OVERVIEW OF CONNECTED CLAIMS

1. This is a civil rights action under 42 U.S.C. § 1983 and Nevada state law. It arises from a single connected chain of events: Defendants Ciecko, Rivera, and Hall filed and concealed an unfounded domestic violence case against Plaintiff; that concealed case was then repeatedly cited by the prosecution to defeat Plaintiff's release on bail after his April 12, 2021 arrest; Plaintiff's resulting house-arrest and probation conditions placed him under the direct supervision of Defendant Christopher Barba; and Defendant Barba then used that supervisory position, together with Defendants Camp, Morris, and Tonge, to falsely re-arrest Plaintiff on May 24, 2021 by misrepresenting the contents of a protective order none of them believed applied to Plaintiff's home.

2. This Complaint is limited to claims and Defendants arising out of this single connected chain of transactions and occurrences, as required by Fed. R. Civ. P. 20(a)(2) and this Court's August 3, 2026 Order (ECF No. 11).

**Overview of How These Events Are Connected**

3. On February 1, 2021, Defendants Ciecko and Rivera responded to an uninvestigated report by Rebecca Pittman and, together with Defendant Hall, initiated Case No. 21-CR-011347 against Plaintiff without notifying him. The case was concealed from public court records; Plaintiff did not learn of it until March 19, 2021, when a background check for a Lyft driving job failed, and did not receive the underlying incident report until April 9, 2021.

4. Three days later, on April 12, 2021, Plaintiff was arrested after defending his home from an armed home invasion involving Pittman and her associates. This arrest became Case No. 21-CR-017669.

5. At every subsequent bail hearing in Case No. 21-CR-017669 — including April 15, May 6, and May 20, 2021 — the prosecution cited Plaintiff's 'extensive criminal history,' relying on Case No. 21-CR-011347 (the concealed case Defendants Ciecko, Rivera, and Hall had initiated), to argue against Plaintiff's release on his own recognizance and against bail generally. Plaintiff was held without bail or on unaffordable bail for weeks as a direct result.

6. When Plaintiff was finally released on bail on May 17, 2021, the release was conditioned on house arrest and probationary supervision. Defendant Christopher Barba was assigned as Plaintiff's probation officer as a direct result of the conditions imposed in Case No. 21-CR-017669 — a position Defendant Barba would not have held but for that case.

7. On May 24, 2021 — 32 minutes after a Family Court hearing at which Hearing Master Holly Roys confirmed on the record that Plaintiff's home was not a restricted location under any protective order — Defendant Barba, using his position as Plaintiff's probation officer, arrived at Plaintiff's home together with Defendants Camp, Morris, and Tonge and re-arrested Plaintiff, falsely telling him that a Temporary Protective Order barred him from his own home. All four Defendants had read the order before arriving and knew this was false.

8. Each link in this chain caused the next: the concealed February case caused Plaintiff's prolonged pretrial detention in April; that detention and its release conditions created Defendant Barba's supervisory authority over Plaintiff; and Defendant Barba used that authority to unlawfully arrest Plaintiff a third time in May. These are not separate, unrelated events — they are a single course of conduct with common questions of law and fact, satisfying Fed. R. Civ. P. 20(a)(2).

## II. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction over the state law claims).

10. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Clark County, Nevada, within this district.

## III. PARTIES

**Plaintiff**

11. Plaintiff Shane Edward Sipe is a natural person and resident of Nevada. At all relevant times, Plaintiff had no violent criminal history; his only prior record was a single non-violent misdemeanor more than twenty years old.

**Defendants**

12. Defendant Las Vegas Metropolitan Police Department ("LVMPD") is a political subdivision of the State of Nevada and employed the individual officer Defendants named below. LVMPD is liable for state law torts committed by its officers within the scope of their employment under the doctrine of respondeat superior, and is separately liable for its own unconstitutional policies, practices, and customs as alleged below.

13. Defendant Clark County, Nevada is a political subdivision of the State of Nevada responsible for the training, supervision, policies, and customs of LVMPD officers.

14. Defendant Scott Ciecko (Badge #17043) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

15. Defendant Jeffrey Rivera (Badge #16794) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

16. Defendant Raymond Hall (Badge #10070) was at all relevant times an LVMPD detective acting under color of state law. He is sued in his individual and official capacities.

17. Defendant Ammon Peacock (Badge #14309) was at all relevant times a supervising LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

18. Defendant Ty Kekoa Vesperas (Badge #15240) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

19. Defendant Fernando Perez (Badge #15496) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

20. Defendant Kevin Moss (Badge #16816) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

21. Defendant Donald Sutton (Badge #15153) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

22. Defendant Matthew Campbell (Badge #6959) was at all relevant times an LVMPD detective acting under color of state law. He is sued in his individual and official capacities.

23. Defendant Jason Hanson (Badge #8380) was at all relevant times an LVMPD detective acting under color of state law. He is sued in his individual and official capacities.

24. Defendant Christopher Barba (Badge #9629) was at all relevant times a probation officer employed by LVMPD or Clark County, acting under color of state law, including as Plaintiff's assigned probation officer following his release in Case No. 21-CR-017669. He is sued in his individual and official capacities.

25. Defendant Camp (first name unknown) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

26. Defendant Morris (first name unknown) was at all relevant times an LVMPD police officer acting under color of state law. She is sued in her individual and official capacities.

27. Defendant Tonge (first name unknown) was at all relevant times an LVMPD police officer acting under color of state law. He is sued in his individual and official capacities.

28. Defendants Does 1-20 are additional LVMPD officers, detectives, and supervisors whose identities are presently unknown to Plaintiff but who participated in the constitutional violations alleged herein within this same connected chain of events. They are sued in their individual and official capacities.

29. At all relevant times, each individual Defendant acted under color of state law and within the scope of their employment as a law enforcement or probation officer.

## IV. FACTUAL ALLEGATIONS

### A. Background

30. In 2019, Plaintiff allowed Rebecca Pittman, then homeless, to temporarily use his address at 7240 Dingo Court, Las Vegas, Nevada, to receive a replacement driver's license. Pittman thereafter refused to leave. Plaintiff and Pittman never had a domestic relationship of any kind under Nevada law.

31. Over the following year, Plaintiff repeatedly asked LVMPD to remove Pittman as a trespasser. Officers repeatedly and incorrectly told Plaintiff he needed to formally evict her, contrary to Nevada law governing non-tenant occupants.

### B. The February 1, 2021 Concealed Case, Used Later to Defeat Bail

32. On February 1, 2021, Pittman called LVMPD from a gas station and falsely reported that Plaintiff had assaulted her and that they had a domestic relationship. Defendants Ciecko and Rivera responded and, without meaningfully investigating or attempting to contact Plaintiff, accepted her account.

33. Officer Ciecko's report listed Plaintiff's correct phone number, but neither he nor Rivera called Plaintiff. Instead, on February 8, 2021, Defendant Detective Hall was assigned and submitted a sworn Declaration of Warrant/Summons initiating Case

No. 21-CR-011347, without independently investigating Pittman's claims or the exculpatory circumstances of the underlying dispute.

34. Case No. 21-CR-011347 was not entered into public court records in a way Plaintiff could locate despite his search of Clark County courts. Plaintiff first learned the case existed on March 19, 2021, when a prospective employer's background check (Checkr) returned five counts of domestic violence associated with the case, causing Plaintiff's conditional job offer as a Lyft driver to be withdrawn on March 29, 2021.

35. Plaintiff did not receive the actual incident report until April 9, 2021 — three days before the events of April 12, 2021 described below. Upon reviewing it, Plaintiff learned for the first time the specifics of Pittman's false allegations.

36. On May 4, 2021, at the bench trial for Case No. 21-CR-011347, the prosecution dismissed all charges after Plaintiff refused a plea offer, confirming the case had no merit. By that date, however, Case No. 21-CR-011347 had already been cited against Plaintiff at every bail hearing in the separate, later-filed Case No. 21-CR-017669, as described in Section D below.

**C. The April 12, 2021 Home Invasion and Arrest**

37. On April 11 and 12, 2021, Pittman and her associate Katrina Amaya Lopez sent Plaintiff numerous messages threatening violence and coordinating a plan to force entry into Plaintiff's home.

38. At approximately 10:33 a.m. on April 12, 2021, Plaintiff called 911 to report an active home invasion in progress as Pittman, Katrina Lopez, Jacob Gietler, and

two unknown individuals attempted to force entry through both the front and rear doors of his home.

39. Plaintiff fired two warning shots — one into his own roof, and one twelve inches above the head of an assailant breaking down his front door at a 45-degree upward angle — successfully repelling the intrusion. No one was injured. Plaintiff called 911 a second time and reported the shots fired with no injuries.

40. LVMPD dispatch relayed to responding officers false information that Plaintiff was a 'prohibited person' with a felony conviction, that he had a shotgun, and that he had a history of barricading himself and mental illness. None of this was true, and Plaintiff had no felony convictions, no history of violence, and no diagnosed mental illness.

41. Defendants Peacock, Vesperas, Perez, and Moss responded approximately one hour later. Plaintiff met them at his front door, explained he had just repelled a home invasion captured on his home security system, and showed them evidence. Defendant Peacock walked away without addressing Plaintiff's account or the exculpatory letter Plaintiff handed him, leaving the remaining officers unsupervised.

42. Over the following hours, Defendant Sutton, by telephone, repeatedly agreed to give Plaintiff time to back up his home surveillance video and consult counsel, then called back well before the agreed time had elapsed, on at least six occasions, before threatening to send police dogs into Plaintiff's home. Plaintiff came outside to avoid the threatened use of dogs and was immediately arrested without being advised of his Miranda rights.

43. During the arrest, officers on scene gave Plaintiff's house keys to Rebecca Pittman — one of the individuals who had just attempted to force entry into Plaintiff's home minutes earlier — and permitted her to remain in and occupy the residence.

44. Defendant Vesperas thereafter submitted a Domestic Violence Report falsely stating that Plaintiff 'acknowledged Rebecca is a resident and can enter,' omitting any mention of Plaintiff's 911 calls, the home invasion, or his account of self-defense.

45. Defendant Hanson obtained a telephonic search warrant application listing an eight-minute duration for a 1,930-word sworn affidavit, and photographic evidence from the search bears camera timestamps inconsistent with wall clocks visible in the same photographs, indicating the search of Plaintiff's home began before the warrant was granted at 4:13 p.m. Defendant Hanson's warrant authorized seizure of telephonic evidence including text messages, but no such evidence — including messages plainly showing the invaders' coordination and threats — was ever collected.

46. Defendant Detective Campbell separately told Pittman, in the presence of two witnesses, that she could sell the contents of Plaintiff's home if she wished.

47. Plaintiff was charged in Case No. 21-CR-017669 with, among other things, three counts of attempted murder, arising solely from the two warning shots fired during the home invasion described above.

**D. Bail Hearings: The Concealed February Case Is Used to Keep Plaintiff Detained**

48. At the initial bail hearing on April 15, 2021, the prosecution argued Plaintiff should be denied release on his own recognizance because of his 'extensive violent

criminal history.' Plaintiff in fact had only one twenty-year-old non-violent misdemeanor. Plaintiff was denied OR release and held on $10,000 bail with high-level electronic monitoring.

49. At the May 6, 2021 preliminary hearing, and again at the May 20, 2021 continued hearing, the prosecution repeated the same false characterization of Plaintiff's criminal history in arguing against his release, relying on the existence of Case No. 21-CR-011347 — the same case Defendants Ciecko, Rivera, and Hall had initiated and that had, by that date, already been dismissed on its merits on May 4, 2021 for lack of any factual basis.

50. As a direct and foreseeable result of Defendants Ciecko, Rivera, and Hall's initiation of an unfounded and concealed case, and the prosecution's repeated citation of that case at bail hearings in the separate April 12 matter, Plaintiff remained incarcerated substantially longer than he otherwise would have.

51. Plaintiff was not released until May 17, 2021, and then only on the condition of house arrest with ankle monitoring and probationary supervision.

**E. The Probationary Relationship With Defendant Barba**

52. As a direct consequence of the conditions imposed in Case No. 21-CR-017669, Defendant Christopher Barba was assigned as Plaintiff's probation officer. Defendant Barba had no supervisory relationship with, or authority over, Plaintiff prior to and independent of the April 12 case.

53. Between May 18 and May 20, 2021, Pittman repeatedly and falsely reported to Defendant Barba that Plaintiff was contacting and harassing her. Defendant Barba,

in his capacity as Plaintiff's probation officer, called Plaintiff on multiple occasions threatening to remand him to custody based on these unverified claims.

**F. The May 24, 2021 Re-Arrest by Defendant Barba**

54. On May 24, 2021, at a hearing in Family Court Case No. T21214200t, Hearing Master Holly Roys granted a Temporary Protective Order ("TPO") in favor of Pittman but expressly confirmed on the record that: (a) the home at 7240 Dingo Court belonged to Plaintiff; (b) Plaintiff and Pittman were not married; and (c) the Court lacked authority to bar Plaintiff from his own home. The TPO itself did not list Plaintiff's home address as a restricted location.

55. At approximately 3:00 p.m. — 32 minutes after that hearing concluded — Defendant Barba, in his capacity as Plaintiff's probation officer, arrived at Plaintiff's home together with Defendants Camp, Morris, and Tonge. All four had reviewed the TPO before arriving and knew what it did, and did not, say.

56. Defendant Barba physically removed Plaintiff from his home and told him, falsely, that the TPO barred him from his own residence, that Pittman was 'taking the house for a month,' and that Plaintiff was returning to custody. Defendants Camp, Morris, and Tonge heard these false statements, knew them to be false from having read the same TPO, and said nothing to correct them.

57. Defendant Tonge then searched Plaintiff's home without a warrant and located a machete, a lawful household item, which was used as after-the-fact pretext for the arrest. None of the four Defendants showed Plaintiff the TPO, provided him a copy, or left a copy at the Clark County Detention Center upon booking him.

58. Defendants Camp and Morris remained at the home after Plaintiff's arrest and permitted Pittman to reoccupy it, including by removing Plaintiff's lawful tenants.

59. On June 22 and June 30, 2021, at subsequent Family Court hearings, Hearing Master Roys confirmed on the record that Plaintiff had never been properly served with the TPO and that Plaintiff's home was never a restricted location under it — directly confirming that Defendant Barba's May 24 statements were false when made.

**G. Continued Incarceration, Coerced Plea, and Dismissal**

60. Plaintiff was re-incarcerated following the May 24, 2021 arrest. He remained in custody until August 4, 2021, when — facing a threat from appointed counsel that going to trial would mean years of continued pretrial detention — Plaintiff entered a coerced Alford plea to a single reduced charge.

61. On September 10, 2023, Plaintiff moved pro se to withdraw his plea. After the prosecution finally reviewed Plaintiff's home surveillance video showing the April 12 home invasion, the prosecution agreed the withdrawal was appropriate, and on January 10, 2024, the court granted the motion and dismissed all charges in their entirety.

62. In total, Plaintiff was incarcerated more than 115 days on charges arising from the connected chain of events described above, before all charges were ultimately dismissed.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 — Fourth Amendment — False Arrest (April 12, 2021)**

(Against Defendants Peacock, Vesperas, Perez, Moss, Sutton, and Does 1-10)

63. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

64. Defendants arrested Plaintiff on April 12, 2021 without probable cause. Plaintiff had called 911 first, reported an active home invasion, fired warning shots in self-defense against armed intruders forcing entry, and no one was injured. Defendants knew or should have known Plaintiff was the victim of the home invasion, not its perpetrator.

65. No reasonable officer could have believed probable cause existed to arrest Plaintiff on these facts. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — Fourth Amendment — Illegal Search (April 12, 2021)**

(Against Defendants Hanson, Vesperas, Campbell, and Does 1-10)

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Defendants entered and searched Plaintiff's home before a valid search warrant was granted, as shown by photographic metadata inconsistent with visible clocks at the scene, and executed the warrant's authorization to collect telephonic evidence in a deliberately incomplete manner, omitting evidence favorable to Plaintiff.

68. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Fourth Amendment — False Arrest (May 24, 2021)

(Against Defendants Barba, Camp, Morris, Tonge, and Does 1-10)

69. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

70. Defendants arrested Plaintiff on May 24, 2021 based on a knowing misrepresentation of the TPO's contents. All four Defendants had read the TPO before arriving and knew it did not restrict Plaintiff from his own home. Plaintiff had also never been properly served with the TPO, as later confirmed by Hearing Master Roys.

71. No reasonable officer could have believed probable cause existed to arrest Plaintiff for violating an order that did not restrict him from his home and that he had never been served. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Fifth Amendment — Miranda Violation

(Against Defendants Peacock, Vesperas, Perez, Moss, Sutton, Campbell, and Does 1-10)

72. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

73. Defendants arrested and interrogated Plaintiff on April 12, 2021 without advising him of his Miranda rights. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Fourteenth Amendment — Fabrication and Concealment of Evidence

(Against Defendants Ciecko, Rivera, Hall, Vesperas, Hanson, Campbell, Barba, and Does 1-10)

74. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75. Defendants Ciecko, Rivera, and Hall initiated Case No. 21-CR-011347 without meaningful investigation, concealed it from public court records, and thereby enabled the prosecution to use it against Plaintiff at bail hearings in Case No. 21-CR-017669 before Plaintiff even knew the case existed.

76. Defendant Vesperas fabricated a report falsely stating Plaintiff acknowledged Pittman as a resident. Defendant Barba fabricated statements about the contents of a TPO he had personally read. Defendants Hanson and Campbell participated in creating an incomplete and misleading evidentiary record regarding the April 12 search.

77. This fabricated and concealed evidence was used to deprive Plaintiff of liberty without due process of law. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## SIXTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Fourteenth Amendment — Malicious Prosecution

(Against All Individual Defendants)

78. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

79. Defendants initiated and continued criminal proceedings against Plaintiff without probable cause and with malice, including by using the unfounded, concealed February case as a tool to prolong Plaintiff's detention on the April charges. All proceedings terminated in Plaintiff's favor, with Case No. 21-CR-011347 dismissed May 4, 2021, and all remaining charges in Case No. 21-CR-017669 dismissed January 10, 2024.

80. As a direct and proximate result, Plaintiff suffered 115 or more days of wrongful incarceration and other damages as alleged herein.

**SEVENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — Conspiracy (February 2021 Concealment and Its Use to Defeat Bail)**

(Against Defendants Ciecko, Rivera, Hall, and Does 1-10)

81. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

82. Defendants Ciecko, Rivera, and Hall reached an agreement or understanding to file and conceal an unsubstantiated case against Plaintiff, foreseeably and directly enabling its later use to defeat Plaintiff's release on bail in a separate, subsequent case. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**EIGHTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — Conspiracy (May 24, 2021 TPO Misrepresentation)**

(Against Defendants Barba, Camp, Morris, Tonge, and Does 1-10)

83. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

84. Defendants Barba, Camp, Morris, and Tonge reached an explicit agreement to misrepresent the TPO's contents to manufacture grounds for Plaintiff's arrest, evidenced by their coordinated arrival 32 minutes after the Family Court hearing, their shared knowledge of the TPO's actual contents, their coordinated division of conduct at the scene, and their uniform refusal to show Plaintiff the order or provide him a copy. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**NINTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — Failure to Intervene**

(Against Defendants Peacock, Perez, Moss, Camp, Morris, Tonge, and Does 1-10)

85. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

86. These Defendants observed other Defendants violating Plaintiff's constitutional rights, had a realistic opportunity to intervene, and failed to do so. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**TENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 — Monell Liability — Unconstitutional Policies, Customs, and Practices**

(Against LVMPD and Clark County)

87. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88. Clark County, through LVMPD, maintained policies, customs, or practices that were the moving force behind the violations alleged above, including: (a) a custom of accepting an initial complainant's account without meaningful investigation; (b)

a custom of protecting individuals labeled as "victims" from subsequent scrutiny regardless of contrary evidence, as shown by Pittman's treatment throughout the events described herein; (c) inadequate training on the distinction between tenants and trespassing guests under Nevada law, on Brady obligations to disclose exculpatory evidence, and on the proper reading and service of protective orders; and (d) inadequate supervision, including Defendant Peacock's abandonment of the scene on April 12, 2021 and the absence of any meaningful review of the reports described above for accuracy.

89. These policies and customs were the moving force behind, and proximately caused, the violations of Plaintiff's rights described in this Complaint. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## ELEVENTH CLAIM FOR RELIEF

### Nevada State Law — Malicious Prosecution

(Against All Individual Defendants)

90. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

91. Defendants initiated and continued criminal proceedings against Plaintiff without probable cause and with malice; the proceedings terminated in Plaintiff's favor; and Plaintiff suffered special injury including incarceration, loss of property, and reputational harm. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## TWELFTH CLAIM FOR RELIEF

### Nevada State Law — Abuse of Process

(Against All Individual Defendants)

92. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

93. Defendants used legal process — the February case, arrest, search, and the TPO — for ulterior purposes unrelated to legitimate law enforcement, including protecting Pittman and prolonging Plaintiff's detention, and performed acts not proper in the regular conduct of proceedings, including fabricating and concealing evidence. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**THIRTEENTH CLAIM FOR RELIEF**

**Nevada State Law — Intentional Infliction of Emotional Distress**

(Against All Individual Defendants)

94. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

95. Defendants' conduct described above was extreme and outrageous, was intended to cause or was undertaken with reckless disregard of the certainty of causing severe emotional distress, and did in fact cause Plaintiff severe emotional distress. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**FOURTEENTH CLAIM FOR RELIEF**

**Nevada State Law — Civil Conspiracy**

(Against All Individual Defendants)

96. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

97. Defendants agreed and combined to accomplish the unlawful objectives described above and committed overt acts in furtherance of that agreement. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

**FIFTEENTH CLAIM FOR RELIEF**

**Nevada State Law — Negligence**

(Against LVMPD and Clark County)

98. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

99. Defendants owed Plaintiff a duty of care to conduct competent, unbiased investigations and to properly train and supervise officers, and breached that duty as described above, proximately causing Plaintiff's injuries. As a direct and proximate result, Plaintiff suffered damages as alleged herein.

## VI. DAMAGES

100. As a direct and proximate result of Defendants' conduct described above, Plaintiff suffered economic damages including, without limitation: loss of his home and its equity; loss of personal property taken while Pittman occupied his home with police assistance; the $2,250 cost of defensive counsel in Case No. 21-CR-011347; lost employment opportunities including the voided Lyft position; and other economic losses to be proven at trial.

101. Plaintiff suffered non-economic damages including more than 115 days of wrongful incarceration; physical harm from denial of prescription medication and corrective lenses while incarcerated; severe emotional distress; reputational harm; and loss of dignity and autonomy, to be proven at trial.

102. Defendants' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's constitutional rights, warranting an award of punitive damages against the individual Defendants in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shane Edward Sipe respectfully requests that this Court:

1. Enter judgment in favor of Plaintiff and against all Defendants, jointly and severally, on all claims;
2. Award compensatory damages in an amount to be proven at trial;
3. Award punitive damages against the individual Defendants in an amount to be determined by the jury;
4. Award pre-judgment and post-judgment interest as allowed by law;
5. Award Plaintiff's costs of suit, including reasonable attorney's fees under 42 U.S.C. § 1988;
6. Issue a declaratory judgment that Defendants' conduct violated Plaintiff's constitutional and statutory rights;
7. Grant such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: September 04, 2026

Respectfully submitted,

**I certify that Artificial Intelligence was used to prepare the foregoing document.**

____/s/ Shane Sipe____________________________

Shane Edward Sipe, Pro Se

3925 Six Gun Rd, North Las Vegas, NV 89032

702-372-4022 | Shane_sipe@outlook.com

## VERIFICATION

I, Shane Edward Sipe, declare under penalty of perjury under the laws of the United States and the State of Nevada that I am the Plaintiff in this action; that I have read the foregoing First Amended Complaint; that I know the contents thereof; and that the same is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on _September 04, 2026, at North Las Vegas, Nevada.

_______/s/ Shane Sipe________________________

Shane Edward Sipe

Shane Sipe, Pro Se

3925 Six Gun Road

North Las Vegas, NV 89032

702-372-4022

Shane_sipe@outlook.com